UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARTINSBURG DIVISION

ERIC SCOTT BARKER,       )
       )
       Plaintiff,       )
       )
v.       )       Civil Action No. 3:20-00202
       )
IRENE KEELEY, *et al.*,       )
       )
       Defendants.       )

## PROPOSED FINDINGS AND RECOMMENDATION

On October 19, 2020, Plaintiff, acting *pro se*, filed his Complaint in this matter claiming entitlement to relief for alleged violations of his constitutional rights pursuant to Bivens v. Six Unknown Named Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). (Document No. 1.) By Order entered on November 5, 2020, the above action was designated and assigned to the Honorable Thomas E. Johnston, Chief United States District Judge for the Southern District of West Virginia. (Document No. 6.) By Order entered on November 6, 2020, this matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 7.)

## FACTUAL AND PROCEDURAL HISTORY

A.    **Criminal Action No. 1:13-00018:**

On July 8, 2013, Plaintiff pled guilty in the Northern District of West Virginia to one count of aiding and abetting the possession with intent to distribute heroin (Count Two) in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2. (Criminal Action No. 1:13-00018,

Document Nos. 55, 56, 77, 82.) The District Court sentenced Plaintiff on October 22, 2013, to serve a 151-month term of imprisonment to run consecutive to the term of imprisonment imposed in Case Number 1:04-cr-86, to be followed by a three-year term of supervised release. (Id., Document No. 104.) The District Court also imposed a $100 special assessment. (Id.)

On October 23, 2013, Plaintiff, by counsel, filed a Notice of Appeal. (Id., Document No. 112.) In his appeal, Plaintiff argued that the District Court erred in denying his motion to suppress evidence obtained during a search of his residence in violation of his Fourth Amendment rights. On January 13, 2015, the Fourth Circuit Court of Appeals vacated Plaintiff's judgment and remanded the case to the District Court "to determine whether the information gained from the illegal walk-through and dog sniff affected Officer's Root's decision to seek a warrant." Id., Document No. 45. By Order entered on May 11, 2015, the District Court granted the United States' Motion to Dismiss Superseding Indictment. (Id., Document No. 158.)

## B.     Criminal Action No. 1:16-00031:

On June 30, 2017, Plaintiff pled guilty in the Northern District of West Virginia to one count of attempted possession with intent to distribute para-flurorofentanyl, a Schedule I controlled substance, in violation of  21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.SC. § 846 (Count 17). (Criminal Action No. 1:16-0031, Document Nos. 202, 204, 205, 207.) A Presentence Investigation Report was prepared. (Id., Document No. 221.) The District Court sentenced Plaintiff on August 21, 2017, to serve a 120-month term of imprisonment, to be followed by a three-year term of supervised release. (Id., Document No. 222.) The District Court also imposed a $100 special assessment. (Id.) It was further ordered that Plaintiff forfeit his interest in the following property to the United States: "The Court adopts, by reference the Preliminary Order of Forfeiture, filed on

August 9, 2017 at Docket Number 219, except the Court reduces the total money judgment amount to $148,037.00 to account for the total funds already seized by the United States." (Id.) On August 1, 2018, the District Court entered its Final Order of Forfeiture concerning the following property: (1) A 2007 Mercedes sedan with Florida registration GHIM82; (2) $22,408.00 in U.S. currency seized on March 22, 2016; and (3) Funds held in Plaintiff's North Central Regional Jail commissary account (totaling approximately $2,555). (Id., Document No. 252.) Subsequently, the United States filed a Motion to Amend or Correct the Final Forfeiture Order. (Id., Document No. 263.) By Order entered on April 5, 2019, the District Court granted the United States' Motion and Amended the Final Forfeiture Order to include $317.05 in Plaintiff's BOP Trust Fund Account. (Id., Document No. 264.) The District Court determined that "[t]he United States Postal Inspection Service ("USPIS") cannot locate all property subject to forfeiture in this case because the defendant has dissipated substantial proceeds of the offense or has hidden such property well enough that it cannot be located by the USPIS upon the exercise of due diligence." (Id.)

On April 29, 2019, Plaintiff filed his Objections to the United States' Motion to Amend or Correct the Final Forfeiture Order and a Motion for Correction of Sentence. (Id., Document Nos. 265 and 266.) In his Motion for Correction of Sentence, Plaintiff requests that the Court enter "an order correcting the sentence by striking the Final Order of Forfeiture (Doc 252)." (Id., Document No. 265.) In support, Plaintiff stated that the indictment only gave notice that "upon obtaining a conviction with respect to a MAM-2201 distribution offense charged in the indictment" would the Government be authorized to seek forfeiture." (Id.) Plaintiff argued that "as a result of the plea-agreement" he was "not convicted of any offense with respect to a MAM-2201 distribution offense." (Id.) On June 6, 2019, Plaintiff filed a Supplemental Brief in Support of his Motion to

Correct Sentence. (Id., Document No. 268.)

On July 7, 2019, Plaintiff, acting *pro se*, filed his "Motion to Vacate Set Aside Or Correct Sentence Pursuant to 28 U.S.C. § 2255." (Id., Document No. 269.) Citing United States v. Whiteside, 748 F.3d 541 (4th Cir. 2014), Plaintiff argues that he no longer qualifies as a career offender. (Id.) On July 19, 2019, Plaintiff filed his Section 2255 Motion on a Court approved form. (Id., Document No. 273.) As grounds for *habeas* relief, Plaintiff alleged as follows:

| Ground One: | I was sentenced erroneously as a career offender. Due to the fact recent case law has determined that "attempt" offenses are not career-able. I would like to be resentenced without the career offender enhancement. |
|---|---|
| Ground Two: | Ineffective Assistance of Counsel – Attorney Deception. I was led to believe that a 120-month sentence was reasonable because of my career offender status. However, the Supreme Court has held that Application Notes do not allow the Sentencing Commission or Judges to add offenses to the enumerated offenses in USSG 4B1.1. I would like to be resentenced without the career offender enhancement. |
| Ground Three: | Based on newly discovered evidence, fentanyl analogues can trigger false positive for scheduled substance and, indeed, this is not uncommon. I request the conviction overturned for a fundamental miscarriage of justice – actual innocence. |

On August 2, 2019, the Court issued a "Hill v. Braxton Notice" warning Plaintiff that his Section 2255 Motion "will be dismissed as untimely unless he can demonstrate that the one-year statute of limitation does not bar his motion." (Id., Document No. 274.) On August 26, 2019, Plaintiff filed his Response to the "Hill v. Braxton Notice." (Id., Document No. 276.) On September 4, 2019, Plaintiff filed a Motion for Citation of Supplemental Authorities Concerning Equitable Tolling. (Id., Document No. 277.)

On September 26, 2019, Plaintiff filed his Motion for Ruling on the Pleadings for the

4

Objections to and Correction of the Forfeiture Order. (Id., Document No. 278.) By Order entered on September 30, 2019, the District Court directed the United States to Respond to Plaintiff's Motion for Correction of Sentence. (Id., Document No. 279.) On October 10, 2019, the United States filed its Response arguing as follows: (1) "The Defendant waived the right to appeal the forfeiture;" and (2) "The Defendant lacks standing to appeal the Final Order of Forfeiture." (Id., Document No. 281.) On October 25, 2019, Plaintiff filed his Objections. (Id., Document No. 282.)

On September 1, 2019, Plaintiff filed his Motion to Expedite the Ruling on the Pleadings regarding his Section 2255 Motion. (Id., Document No. 283.) On November 18, 2019, Plaintiff filed his Memorandum in Support of the Actual Innocence Exception in support of his Section 2255 Motion. (Id., Document No. 285.) On January 31, 2020, Plaintiff filed his "Memorandum of Fact and Law in Support of Supplemental 28 U.S.C. § 2255 Motion to Compel the Court that Equitable Tolling should be Granted" (Document No. 287) and "Memorandum of Fact and Law in Support of Ineffective Assistance of Counsel Claim" (Document No. 288). On February 21, 2020, Plaintiff filed his "Supplemental Motion to Show Cause To Excuse Procedural Default Pursuant to Hill v. Braxton" (Document No. 291) and "Motion to Strike and Reissue the Final Forfeiture Order and the Amended Preliminary Order" (Document No. 292). On February 28, 2020, Plaintiff filed his Motion to Correct Presentence Report Pursuant to Fed. R. Crim. P. 36. (Id., Document No. 294.) On March 6, 2020, Plaintiff filed his Motion for Evidentiary Hearing in Support of the Motion for Correction of the Record Pursuant to Fed. R. Crim. P. 36. (Id., Document No. 295.)

On March 19, 2020, the United States Marshals Service filed its Process Receipt and Return as to Final Order of Forfeiture. (Id., Document No. 296.) On April 30, 2020, Plaintiff filed

his Supplemental Authority in Support of his Motion to Correct the Presentence Report (Document No. 297), Motion to Stay Pending 2255 Pending Rule on the Motion to Correct the Presentence Report (Document No. 298), and Motion for Transcripts of Plea and Sentencing Hearings (Document No. 299). By Order entered on May 1, 2020, the District Court granted Plaintiff's Motion for Transcripts. (Id., Document No. 300.) On May 5, 2020, Plaintiff filed his Second Motion to Correct Record Pursuant to Rule 36. (Id., Document No. 301.) On May 14, 2020, Plaintiff filed his Motion for Prompt Order Directing the United States to Immediately Release Seized Assets to the Defendant to Prevent Further Irreparable Harm. (Id., Document No. 302.) On May 26, 2020, Plaintiff filed his Documentary Evidence in Support of Motion for Correction of the Record Pursuant to Rule 36 (Document No. 304) and Ex Parte Motion for Appointment of the Public Defender's Office to Assist Him in his Rule 36 Proceedings (Document No. 305).

On June 2, 2020, Plaintiff filed a Motion to Add Grounds 5 and 6 in Support of his Section 2255 Motion. (Id., Document No. 306.) Specifically, Plaintiff stated that he wished to add the following grounds:

Ground Five: Ineffective assistance of counsel when counsel failed to illicit testimony from Cpl. Smith that the Defendant never intended to distribute the para-flurorofentanyl, and object to a lack of a factual basis for Defendant's guilty plea.

Ground Six: The Court lacked sufficient showing of a factual basis to support the Defendant's guilty plea to Count 17.

(Id.) On June 11, 2020, Plaintiff filed a Motion for Correction of Clerical Error in Judgment Pursuant to Rule 36. (Id., Document No. 312.) On June 30, 2020, Plaintiff filed his Motion to Supplement Section 2255 with a Claim of Prosecutorial Misconduct. (Id., Document No. 315.)

On September 10, 2020, the United States filed a Motion to Direct the Federal Bureau of

Prisons to Turn Over Funds from Defendant's Inmate Trust Account. (Id., Document No. 319.) Specially, the United States requested that the Court hold Plaintiff "accountable to pay his criminal monetary obligation by ordering the [BOP] to turn over to the Clerk of this Court $100 from Barker's Inmate Trust Fund Account to pay the special assessment that this Court ordered Barker to pay." (Id.) By Order entered the same day, the District Court granted the United States' Motion and ordered the BOP to send to the Clerk of the Court the sum of $100 from Plaintiff's Inmate Trust Fund Account. (Id., Document No. 321.) The Court received Plaintiff's special assessment in the amount of $100 on September 29, 2020. (Id., Document No. 323.) Plaintiff filed a Motion to Issue Subpoenas on October 2, 2020, and the District Court denied his Motion on October 13, 2020. (Id., Document Nos. 325 and 326.)

## C.    Plaintiff's present filings.

On October 19, 2020, Plaintiff, acting *pro se*, filed a Complaint in this matter claiming entitlement to relief pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).[1] (Civil Action No. 3:20-00202, Document No. 1.) As Defendants, Plaintiff names the following: (1) Irene Keeley, United States District Court Judge; (2) U.S. Attorney's Office for the Northern District of West Virginia; (3) U.S. Marshals Service for the Northern District of West Virginia; and (4) Gerhart, U.S. Postal Inspector. (Id.) Concerning District Judge Keeley, Plaintiff alleges that she "is working in concert" with the U.S. Attorney's Office and the U.S. Marshals Service ("USMS") to deprive Plaintiff of "his liberty and property by acting as a 'rubber stamp' judge, granting any motion presented to her

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

by a representative of these offices causing substantial injury to [Plaintiff]." (Id., pp. 1 – 2.) Plaintiff states that his claims "can easily be demonstrated by the [review of the] record." (Id., p. 2.) Plaintiff explains that on September 10, 2020, the United States Attorney's Office filed a motion in Criminal Action No. 1:16-cr-00031 requesting the BOP turn over $100 from Plaintiff's Inmate Trust Fund Account. (Id.) Plaintiff explains that the United States Attorney's Office provided the Court with a Proposed Order. (Id.) Plaintiff complains that District Judge Keeley "signed the proposed order the same day the motion was filed" without giving Plaintiff the opportunity to respond to the United States' motion. (Id.) Plaintiff alleges that if the Court would have given him the "opportunity to attack the motion, he could have provided the court with the fact that the $100 special assessment fee had already been paid in full." (Id.) Plaintiff alleges that "the record will reflect that Judge Keeley ordered the $100 special assessment fee that [Plaintiff] paid in full in consequent of his 2013 conviction, which was overturned on direct appeal and never refunded, to be credited to this instant case." (Id.) Plaintiff also alleges that his "BOP records confirm the $100 special assessment fee has been paid in full." (Id.) Therefore, Plaintiff argues that District Judge Keeley erred because she clearly "did not 'thoroughly consider' the motion" before making her decision to grant the United States' motion. (Id.)

Next, Plaintiff argues that District Judge Keeley "is allowing the USMS and U.S. Attorney's Office to harass [Plaintiff] by executing a forfeiture order that has been nullified." (Id., pp. 2 – 3.) Plaintiff explains that the Superseding Indictment in Criminal Action No. 1:16-cr-00031 states that "upon a MA-2201 conviction 'the government will seek forfeiture and a money judgment.'" (Id., p. 3.) Plaintiff further states District Judge Keeley adopted a Presentence Report containing the exact same language ("upon a MA-2201 conviction 'the government will seek

forfeiture and a money judgment'"). (Id.) Plaintiff, however, argues that "all MAM-2201 counts" were dismissed as a result of his Plea Agreement. (Id.) Thus, Plaintiff claims that the "forfeiture and money judgment" were abrogated. (Id.) Plaintiff, therefore, concludes that the USMS and the United States Attorney's Office "are enforcing the nullified money judgment by having prison officials seize all the monies on [Plaintiff's] trust fund account." (Id.)

Third, Plaintiff argues that he was "incorrectly sentenced as a career offender due to a clerical error in the PSR." (Id.) Plaintiff indicates that District Judge Keeley and AUSA Coger knew he was incorrectly classified as a career offender, but failed to correct the error. (Id., pp. 3 and 5.) Plaintiff further argues that he is actually innocent of his conviction in Criminal Action No. 1:16-cr-00031 and AUSA Cogar knew Plaintiff pled guilty to an offense he was actually innocent of committing. (Id., p. 5.) Plaintiff acknowledges that his Section 2255 Motion is pending before the Court wherein he asserts claims of actual innocence, ineffective assistance of counsel, and prosecutorial misconduct. (Id., p. 4.) Plaintiff complains that "this Section 2255 Petition has been pending for over one year and Judge Keeley has not ordered the prosecutor to respond or referred the case to the Magistrate Judge." (Id.) Plaintiff states that "[o]ne lesson [he] has learned about Judge Keeley's court, it is not one of equity, rules, honesty, and comity is for suckers." (Id.) Plaintiff claims that District Judge Keeley is "a prosecutor dressed in a black robe." (Id.) Plaintiff argues that "it is a judge's duty to protect defendant's from unwarranted loss of liberty and property," but District Judge Keeley "continuously encourages government officials to harass and cause injury to [Plaintiff]." (Id.)

Third, Plaintiff argues that the United States Attorney's Office for the Northern District of West Virginia are "stalking and harassing [Plaintiff] by seizing his property and falsifying

evidence in furtherance of depriving [Plaintiff] of his liberty." (Id.) First, Plaintiff explains that AUSA Shawn Morgan worked in concert with TFA Robert Root to deprive Plaintiff of his Fourth Amendment protection to be free from unreasonable searches. (Id.) Plaintiff states that the pair lied in a search warrant affidavit after probation officer, Vincent Zummo, requested a drug-sniffing dog to search Plaintiff's home. (Id.) Plaintiff states that the Fourth Circuit Court of Appeals determined this search to be illegal in Case No. 13-4806. (Id., pp. 4 – 5.) Plaintiff complains that District Judge Keeley presided over the suppression issue for the lower court and authorized this misconduct by failing to properly apply Fourth Circuit precedent. (Id., p. 5.) Second, Plaintiff complains that the United States Attorney's Office is improperly seizing money from his Inmate Trust Fund Account concerning his special assessment and forfeiture concerning Criminal Action No. 1:16-cr-00031. (Id., pp. 5 – 6.) Plaintiff alleges that he "was unaware that the forfeiture still stood in the eyes of the Government until the Government's Motion was filed." (Id., p. 6.) Concerning the special assessment, Plaintiff again states that the record clearly reveals that his special assessment was paid in full. (Id.)

As to U.S. Postal Inspector Agent Gerhart, Plaintiff alleges that he "stalks [Plaintiff] from institution to institution." (Id., p. 7.) Plaintiff explains that Agent Gerhart "stalks [Plaintiff] from institution to institution" by inquiring about Plaintiff's Inmate Trust Fund Account. (Id.) Plaintiff further alleges that Agent Gerhart has warned BOP staff to "keep a close eye" on Plaintiff, and this has resulted in Plaintiff's mail being thoroughly searched and "officers routinely stare at [Plaintiff] suspiciously." (Id.)

Based upon the foregoing, Plaintiff requests that a restraining order be entered against the above-named Defendants and the return of his property and funds. (Id.)

On November 2, 2020, Plaintiff filed his Motion for Leave to Proceed *in Forma Pauperis*. (Id., Document No. 5.) On November 10, 2020, Plaintiff filed a Memorandum of Facts in Support of his Complaint. (Id., Document No. 8.) Plaintiff states that a review of the transcript from his Plea Hearing in Criminal Action No. 1:16-cr-00031 provides "documentary evidence that AUSA Tighe acted in bad faith by motioning the Court and submitting a proposed order to remove $100 from [Plaintiff's] trust fund account." (Id., p. 1.) Plaintiff alleges that the Proposed Order signed by District Judge Kelley "was in fact a blatant harassment tactic employed by Judge Keeley and AUSA Tighe against [Plaintiff]." (Id., pp. 1 – 2.) Citing the transcripts from the Plea Hearing, Plaintiff notes that District Judge Keeley indicated Plaintiff should received a credit in Criminal Action No. 1:16-cr-00031 if Plaintiff had paid the $100 special assessment in Criminal Action No. 1:13-cr-000018 and such had not been returned to Plaintiff. (Id., pp. 2 – 3.) Plaintiff alleges that the Clerk indicated that Plaintiff had paid the $100 in Criminal Action No. 1:13-cr-00018 and such had not been refunded. (Id.) Therefore, Plaintiff alleges that District Judge Keeley and the United States Attorney's Office "knowingly and intentionally abused their power by attacking [Plaintiff's] property." (Id.)

## THE STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a person seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in

fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint

12

with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

## DISCUSSION

1.  **Improper Party:**

A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law. An inmate may name a federal officer in an individual capacity as a defendant in alleging a constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims for money damages are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Doe v. Chao, 306 F.3d 170, 184 (4th

13

Cir. 2002)("[A] Bivens action does not lie against either agencies or officials in their official capacities."); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999). Such claims are barred by operation of the doctrine of sovereign immunity. McClosky v. Mueller, 446 F.3d 262, 271 - 272 (1st Cir. 2006)("The Bivens doctrine . . . does not override bedrock principles of sovereign immunity so as to permit suits against the United States, its agencies, or federal officers sued in their official capacities.") A plaintiff, however, may seek injunctive relief against a *federal officer* in his or her official capacity. Everett v. Francis, 2009 WL 2971359, * 4 (N.D.W.Va. Sep. 16, 2009)("[T]he Bivens requirement that suits do not lie against federal officers in their official capacity contemplates claims for monetary relief, not injunctive relief."); also see Kirby v. City of Elizabeth City, N.C., 388 F.3d 440, 452 n. 10 (4th Cir. 2004)(stating that injunctive relief sought by the plaintiff could only be awarded against the officers in their official capacities); Community Mental Health Services of Belmont v. Mental Health & Recovery Bd., 150 F.Appx. 389, 401 (6th Cir. 2005)("[A] plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the officials' job, i.e., his official capacity."); Singletary v. Fallen, 2012 WL 368375 (D.S.C. Jan. 17, 2012)(finding that sovereign immunity does not protect federal officials from suit naming them in their official capacities when injunctive relief rather than damages is sought.).

In the instant case, Plaintiff names the United States Attorney's Office and the USMS (a federal law enforcement agency) as defendants. Based upon the foregoing, the undersigned finds that Plaintiff's Bivens action seeking a restraining order against the United States Attorney's Office and the USMS should be dismissed. See Gary v. Gardner, 445 Fed.Appx. 465, 466-67 (3rd Cir. 2011)("[T]he United States Marshals Service is entitled to sovereign immunity from suit.");

Ray v. Pursell, 2017 WL 3707584, * 8 -9 (S.D.W.Va. June 23, 2017)(finding that the court lacks subject matter jurisdiction over plaintiff's constitutional claim against the USMS due to its sovereign immunity); Holder v. U.S. Marshals Office, 2016 WL 3919502, * 2 (E.D.N.C. May 17, 2016)("[T]he United States Marshals Service is not subject to liability under *Bivens* because it is immune from suit."); Deleston v. U.S. Department of Justice, 2010 WL 6872294, * 4 (D.S.C. March 15, 2010)(finding that neither the Department of Justice nor the United States Attorney's Office are proper parties under *Bivens*.); Green v. U.S. Marshals Service, 2007 WL 840311, * 4 (D.S.C. March 15, 2007)("[T]o the extent the defendant plaintiff has only named the USMS as a defendant, the claim should be dismissed pursuant to the doctrine of sovereign immunity.") Although a plaintiff may sue a federal officer in his or her official capacity for injunctive relief, Plaintiff only names the United States Attorney's Office and the USMS as defendants in the instant case. Accordingly, the Court respectfully recommends that Plaintiff's claim against the United States Attorney's Office and the USMS[2] be dismissed.

---

[2] To the extent Plaintiff is asserting a claim against an individual United States Marshal for executing the forfeiture order, the undersigned finds that he or she would be entitled to absolute quasi-judicial immunity. *See Battle v. Morrison*, 139 F.3d 887 (4th Cir. 1998), *citing McCray v. Maryland*, 456 F.2d 1, 5 (4th Cir. 1972)("Court clerks are also accorded derivative judicial absolute immunity when they act in obedience to a judicial order or under the court's direction"); *Mays v. Sudderth*, 97 F.3d 107, 112 (5th Cir. 1996)(The United States Marshal, who is carrying out a facially valid court order, is entitled to derivative judicial absolute immunity); *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994)(Absolute quasi-judicial immunity extends to non-judicial officers "performing tasks so integral or intertwined with the judicial process that these person are considered an arm of the judicial officer who is immune."); *Valdez v. Denver*, 878 F.2d 1285, 1286 (10th Cir. 1989)(finding law enforcement officers had quasi-judicial immunity in suits challenging conduct prescribed by the court's order); *Leonard v. Marra*, 2005 WL 2319710, * 4 (M.D.Ga. Sept. 22, 2005)(finding the United States Marshal, who followed the court's directives to bar an individual from the courthouse, was protected by immunity); *Coverell v. Dept. of Social and Health Services*, 834 F.2d 758, 765 (9th Cir. 1987)(explaining that a rule immunizing public officials carrying out court orders is necessary to avoid requiring those officials from scrutinizing the judicial order in question); *Holder v. U.S. Marshals Office*, 2016 WL 3919502, * 2 (E.D.N.C.

15

2.     **Judicial Immunity**:

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine in <u>Bradley v. Fisher</u>, 80 U.S. 335, __ S.Ct. ___, 20 L.Ed. 646 (1872)." <u>Imbler v. Patchman</u>, 424 U.S. 409, 419, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1976). Judicial immunity does not attach when a judicial officer acts in the clear absence of all jurisdiction. <u>Stump v. Sparkman</u>, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); <u>Pressly v. Gregory</u>, 831 F.2d 514, 517 (4th Cir. 1987). The doctrine of judicial immunity, however, "attaches even if the act in question was in excess of [the judge's] authority." <u>Jackson v. Houck</u>, 181 Fed. App'x 372, 372 (4th Cir. 2006) (quoting <u>Mireles v. Waco</u>, 502 U.S. 9, 12-13, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991)). "This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." <u>Id.</u> (adopting doctrine of absolute judicial immunity in Section 1983 actions) (internal citation omitted). Based upon the allegations contained in the Complaint, the undersigned finds that District Judge Keeley is absolutely immune from suit. Plaintiff appears to argue that District Judge Keeley allowed his constitutional rights to be violated during his criminal proceedings, made improper judicial rulings on certain motions, and is improperly delaying her rulings on Plaintiff's motions challenging his conviction, sentence,

---

May 17, 2016)(finding that a Deputy United States Marshal was entitled to absolute quasi-judicial immunity for carrying out the Court's directive"); *Hansen v. Wahl*, 1990 WL 5730, * 1 (D.Kan. Jan. 16, 1990)(holding that the officer that removed and incarcerated a person on orders from a judge was protected by immunity).

special assessment payment, and forfeiture. As stated above, judges have absolute immunity for their judicial acts even when the judge is accused of acting maliciously and corruptly. Accordingly, the undersigned respectfully recommends that Plaintiff's claim against District Judge Keeley be dismissed.

**3.**     **Prosecutorial Immunity:**

To the extent Plaintiff is asserting a claim against individual Assistant United States Attorneys (AUSA Coger and AUSA Tighe) identified in his Complaint[3], the undersigned finds such a claim to be without merit. Prosecutors have absolute immunity for activities performed as "an officer of the court" if the conduct at issue is closely associated with the judicial phase of the criminal process. Van de Kamp v. Goldstein, 555 U.S. 335, 341 - 343, 129 S.Ct. 855, 860 - 862, 172 L.Ed.2d 706 (2009). In determining whether a prosecutor is entitled to absolute immunity, the Court must apply the "functional approach" examining the nature of the function performed. Id., 555 U.S. at 342, 129 S.Ct. at 861. It is well established that prosecutors are absolutely immune "for their conduct in initiating a prosecution and in presenting the State's case, insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" Burns v. Reed, 500 U.S. 478, 486, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991) (quoting Imbler, 424 U.S. at 430 - 431, 96 S.Ct. at 995). Further, absolute immunity extends to "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." Buckley v. Fitzsimmons, 509 U.S. 259, 272, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993)(quoting Imbler, 424 U.S. at 431, 96 S.Ct. at 995 - 996)). A prosecutor acts as an advocate or "officer of the court" when performing

_____

[3] AUSA Coger and AUSA Tighe are identified in Plaintiff's Complaint, but not named as Defendants.

tasks, such as (1) initiating a judicial proceeding, (2) presenting evidence in support of a search warrant application, (3) conducting a criminal trial, bond hearing, grand jury proceeding or pre-trial hearing, (4) engaging in "an out-of-court effort to control the presentation of [a] witness' testimony," and (5) making a "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before the grand jury after a decision to seek an indictment has been made." Buckley, 509 U.S. at 272, 113 S.Ct. at 2615(quoting Imbler, 424 U.S. at 431, 96 S.Ct. at 995 - 996); Van de Kamp, 555 U.S. at 434, 129 S.Ct. at 861; Dababnah v. Keller-Burnside, 208 F.3d 467, 471 - 472 (4th Cir. 2000)(stating that "numerous courts have found prosecutors absolutely immune when undertaking [extradition proceedings].")

Furthermore, a prosecutor is entitled to absolute immunity even if he or she "acted with an improper state of mind or improper motive." Shmueli v. City of New York, 424 F.3d 231, 237 (2nd Cir. 2005); also see Smith v. McCarthy, 349 Fed.Appx. 851, 859 (4th Cir. 2009), cert. denied, 562 U.S. 829, 131 S.Ct. 81, 178 L.Ed.2d 26 (2010); Brown v. Daniel, 230 F.3d 1351 (4th Cir. 2000)("[T]o the extent [plaintiff] alleges that the prosecutors engaged in misconduct during the prosecution of this case . . ., the prosecutors are absolutely immune."). Thus, prosecutors are entitled to absolute immunity for withholding materially exculpatory evidence, and knowingly presenting perjured testimony or false or misleading evidence to the Court or grand jury. Burns, 500 U.S. at 490-92, 111 S.Ct., at 1941-42("A state prosecuting attorney is absolutely immune from liability for damages under § 1983 for participating in a probable-cause hearing . . ..");  Imbler, 424 U.S. at 422, 96 S.Ct. 984 at 991(citing Yaselli v. Goff, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927))(finding prosecutor entitled to absolute immunity for allegations that he "maliciously and without probable cause procured plaintiff's grand jury indictment by the willful introduction of

false and misleading evidence."); also see Brown v. Daniel, 230 F.3d at 1352; Lyles v. Sparks, 79 F.3d 372, 377 (4th Cir. 1996); Carter v. Burch, 34 F.3d 257, 263 (4th Cir. 1994), cert. denied, 513 U.S. 1150, 115 S.Ct. 1101, 130 L.Ed2d 1068 (1995). Although prosecutors may be entitled to absolute immunity, prosecutors are subject to criminal and professional sanctions for prosecutorial abuses. Imbler, 424 U.S. at 429, 96 S.Ct. at 994; Malley v. Briggs, 475 U.S. 335, 343, n. 5, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). It is well recognized that "[a]bsolute prosecutorial immunity 'is not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself.'" Dababnah, 208 F.3d at 471(quoting Kalina v. Fletcher, 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997)). The Imbler Court determined the importance of protecting the integrity of the prosecutor's office and the judicial system outweighs the desire to afford civil redress to a wronged defendant. Imber, 424 U.S. at 427 - 429, 96 S.Ct. at 993 - 994.

A prosecutor, however, is not entitled to absolute immunity for "investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." Buckley, 509 U.S. at 273, 113 S.Ct. at 2615(citing Burns, 500 U.S. at 491, 11 S.Ct. at 1941-42). Thus, a prosecutor is only entitled to qualified immunity for administrative actions or investigative functions not related to trial preparation, such as holding a press conference, engaging in investigative activity prior to the establishment of probable cause to arrest, providing police officers with legal advice during the investigative phase, or acting as a complaining witness in support of a warrant application. Id.; also see Van de Kamp, 555 U.S. at 342 - 343, 129 S.Ct. at 861. The Supreme Court has explained as follows:

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's

19

role in searching for clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other. Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he "has no greater claim to complete immunity than activities of police officers allegedly acting under his direction."

Buckley, 509 U.S. at 273, 113 S.Ct. at 2616(internal citations omitted). Thus, a prosecutor does not have absolute immunity for a claim that he or she fabricated evidence during the preliminary investigation of an unsolved crime. Id., 509 U.S. at 275, 113 S.Ct. at 2616 - 2617.

In the instant case, Plaintiff alleges that AUSA Coger negotiated a plea agreement with Plaintiff even though AUSA Coger was aware that Plaintiff was "actually innocent" of being a career offender. As to AUSA Tighe, Plaintiff alleges that AUSA Tighe improperly filed a motion and proposed order regarding the removal of $100 from Plaintiff's Inmate Trust Fund Account for the payment of the special assessment that is set forth in the Criminal Judgment Order in Case No. 1:16-cr-00031. As stated above, prosecutors are entitled to absolutely immunity when performing functions "intimately associated with the judicial phase of the criminal process." See Imbler, 424 U.S. at 430, 96 S.Ct. at 995. The Court finds that AUSA Coger's involvement with the plea agreement, and AUSA Tighe's involvement with securing the payment of Plaintiff's special assessment, was conduct intimately associated with the judicial phase of the criminal process. See Taylor v. Kavanagh, 640 F.2d 450, 453 (2nd Cir. 1981)("prosecutor's activities in the plea bargaining context merit the protection of absolute immunity"); Laureano v. Jones, 2011 WL 5282601, * 2 (D.S.C. Nov. 2, 2011)(finding prosecutor was entitled to absolute immunity concerning plaintiff's allegations that the prosecutor engaged in misconduct and conspired to coerce plaintiff to enter a guilty plea), aff'd, 467 Fed.Appx. 233 (4th Cir. 2012); Powell v. United

States, 2012 WL 5395814, * 2 (E.D.N.C. Nov. 5, 2012)(finding prosecutor was entitled to absolute immunity concerning plaintiff's claim that the prosecutor breached his plea agreement and "concealed facts which led [him] to enter his plea of guilty under the mistaken impression of a material fact"); Story v. Kopko, 2010 WL 430831, *3 (D.S.C. Feb. 5, 2010)(finding prosecutor was entitled to prosecutorial immunity concerning plaintiff's claim that the prosecutor breached his plea agreement); Short v. Doe, 2007 WL 4993308, *4 (D.Md. June 25, 2007)("the alleged conduct, breach of a plea agreement, is 'intimately associated with the judicial phase of the criminal process" and the named prosecutors are thus entitled to absolute prosecutorial immunity."). To the extent Plaintiff is asserting a claim against AUSA Coger and AUSA Tighe, undersigned recommends that Plaintiff's claim be dismissed as both are entitled to absolute immunity.

**4.     Claims Challenging Conviction and Sentence Precluded by Heck:**

Notwithstanding the undersigned's above findings, the undersigned will briefly consider Plaintiff's claims concerning Criminal Action No. 1:16-000031. In Plaintiff's Complaint, Plaintiff alleges that he is actually innocent of his conviction in Criminal Action No. 1:16-00031. Plaintiff further challenges the validity of his sentence in Criminal Action No. 1:16-00031. Specifically, Plaintiff alleges that the Court is improperly requiring the payment of the special assessment and collecting funds and property regarding the forfeiture. Given the nature of Plaintiff's allegations, it appears that Plaintiff is implying the invalidity of his conviction and sentence. A decision in this civil action finding that Plaintiff is actually innocent of his conviction, or a favorable decision concerning the special assessment or forfeiture portion of the Criminal Judgment Order, would necessarily invalidate Plaintiff's conviction and sentence. Consequently, the undersigned finds that

Plaintiff has failed to state a cognizable claim under <u>Bivens</u> pursuant to <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). <u>See</u> <u>Messer v. Kelly</u>, 129 F.3d 1259 (4th Cir. 1997)(stating that the rationale in *Heck* applies in *Bivens* actions). In <u>Heck</u>, the United States Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254. A claim for damages bearing the relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983.

<u>Id.</u> at 486-87, 114 S.Ct. 2372. <u>See also</u> <u>Ballenger v. Owens</u>, 352 F.3d 842 (4th Cir. 2003)(holding that an arrestee's Section 1983 claim was not cognizable against state trooper, alleging unreasonable search and seizure, under *Heck,* since judgment in arrestee's favor would have implied the invalidity of conviction). Plaintiff did not file a direct appeal and his Section 2255 Motion is currently pending before the Northern District of West Virginia. The undersigned, therefore, finds that because Plaintiff has not demonstrated that his criminal conviction or sentence have been invalidated, Plaintiff's <u>Bivens</u> claim is not cognizable pursuant to <u>Heck</u>.

**5.** **<u>Unconstitutional Search Regarding Criminal Action No. 1:13-00018</u>:**

Notwithstanding the undersigned's finding that the United States Attorney's Office and District Judge Keeley are entitled to immunity, the undersigned will briefly consider Plaintiff's Fourth Amendment claim. Plaintiff argues that the United States Attorney Office violated his Fourth Amendment rights based upon the improper search underlying Criminal Action No. 1:13-00018. (Document No. 1.) Plaintiff claims that AUSA Shawn Morgan worked in concert with TFA Robert Root to deprive Plaintiff of his Fourth Amendment protection to be free from unreasonable

searches. (Id.) Plaintiff states that the pair lied in a search warrant affidavit prepared by Plaintiff's probation officer, Vincent Zummo, regarding the request for a drug-sniffing dog to search Plaintiff's home. (Id.) Plaintiff states that the Fourth Circuit Court of Appeals determined this search to be illegal in Case No. 13-4806. (Id., pp. 4 – 5.) Plaintiff complains that District Judge Keeley presided over the suppression issue for the lower court and authorized this misconduct by failing to properly apply Fourth Circuit precedent. (Id., p. 5.)

Since there is no federally prescribed statute of limitation for a Bivens action, Courts look to and apply their respective State's statutes of limitation. See Wilson v. Garcia, 471 U.S. 261, 276, 105 S.Ct. 261, 85 L.Ed.2d 254 (1985)(overruled on other grounds by, Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004)). Under West Virginia law, the applicable period of limitation upon a plaintiff's right to file a personal injury is two-years from the time the cause of action accrued. See W.Va. Code § 55-2-12(b).[4] This statute also applies to claims for property damage. Although the limitation period is borrowed from State law, the question of when a cause of action accrues is answered according to federal law. See Brooks v. City of Winston-Salem, NC, 85 F.3d 178, 181 (4th Cir. 1996). Under federal law, a cause of action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, MD House of Corr., 64 F.3d 951, 955 (4th Cir. 1995)(en banc), cert. denied, 516 U.S. 1177, 116 S.Ct. 1273, 134 L.Ed.2d 219

---

[4]   West Virginia Code § 55-2-12 provides as follows:
>   Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

23

(1996)(citing United States v. Kubrick, 444 U.S. 111, 122-24, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)). "Accrual of a claim does not 'await awareness by the plaintiff that his injury was negligently inflicted.'" Nasim, 64 F.3d at 955 (quoting Childers Oil Co., Inc. v. Exxon Corp., 960 F.2d 1265, 1272 (4th Cir. 1992)). Accordingly, for a Bivens action, "a cause of action accrues either when the plaintiff has knowledge of his claim or when he is put on notice -- e.g., by the knowledge of the fact of injury and who caused it -- to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim." Nasim, 64 F.3d at 955. To determine when a plaintiff possessed knowledge of his injury, the Court "may look to the common-law cause of action most closely analogous to the constitutional right at stake as an 'appropriate starting point.'" Brooks, 85 F.3d at 181 (citations omitted).

Furthermore, courts look to State law to determine whether the statute of limitations is tolled with respect to Plaintiff's Bivens claim and state law claims. Wallace v. Kato, 549 U.S. 384, 394 (2007)("We have generally referred to state law for tolling rules, just as we have for the length of the statute of limitations."); Rakes v. Rush, 2009 WL 2392097, * 5 (S.D.W.Va. Aug. 4, 2009)(J. Copenhaver)(citing Board of Regents v. Tomanio, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980)). West Virginia recognizes the discovery rule, which tolls the statute of limitations until a claimant knows or by reasonable diligence should know his claim. See Gaither v. City Hospital, Inc., 199 W.Va. 706, 487 S.E.2d 901 (1997); also see Dunn v. Rockwell, 225 W.Va. 43, 53, 689 S.E.2d 255, 265 (2009). The West Virginia Supreme Court discussed the proper application of the discovery rule as follows:

> [T]he statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breach that duty, and (3) that the conduct of that entity has a causal relation to the injury.

24

Dunn v. Rockwell, 225 W.Va. 43, 52-53, 689 S.Ed.2d 255, 264-65(2009)(quoting Gaither v. City Hospital, Inc., 199 W.Va. 706, 487 S.E.2d 901 (1997)). Typically, a "plaintiff will 'discover' the existence of a cause of action, and the statute of limitations will begin to run, at the same time that the actionable conduct occurs." Id., 225 W.Va. at 53, 689 S.Ed. 2d at 265. A plaintiff is "charged with knowledge of the factual, rather than the legal, basis for the action." Id. The issue of "whether a plaintiff 'knows of' or 'discovered' a cause of action is an objective test" focusing on "whether a reasonable prudent person would have known, or by the exercise of reasonable diligence should have known, the elements of a possible cause of action." Id. Generally, a determination concerning the application of the discovery rule requires "resolution of factual questions by the trier of fact." Id.

Plaintiff alleges that the United States Attorney's Office and District Judge Keeley violated his Fourth Amendment rights based upon the improper search that lead to the charges contained in Criminal Action No. 1:13-00018. Generally, "[c]laims arising out of police actions towards a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur." Massey v. Wriston, 2016 WL 5172811, * 5 (S.D.W.Va. Sept. 21, 2016)(J. Johnston)(citations omitted). A review of the record reveals that the alleged improper search was conducted on February 20, 2013. (Criminal Action No. 1:13-00018, Document No. 14, 18, 20.) On April 2, 5, and 10, 2013, Plaintiff filed motions to suppress based on the alleged unlawful search. (Id.) On June 26, 2013, the District Court denied Plaintiff's motions to suppress. (Id., Document No. 47.) Plaintiff filed an appeal. On January 13, 2015, the Fourth Circuit held that the "walk-through and dog sniff were unlawful searches." (Id., Document No. 136.) Accordingly, by applying the West Virginia two-year statute of limitation, together with the federal standard of

25

accrual, the undersigned finds that Plaintiff's cause of action for the illegal search expired on February 20, 2015, two years from the date that the alleged unlawful search occurred (February 20, 2013). Even with the most liberal construction of the facts in favor of Plaintiff, the undersigned finds that at the latest Plaintiff had knowledge of his claim on January 13, 2015 (the date of the Fourth Circuit's decision). Assuming the most liberal construction of the facts, Plaintiff's cause of action based upon the illegal search expired on January 13, 2017. Plaintiff initiated this action on October 19, 2020, well after the statute of limitations expired. [5] Accordingly, the undersigned respectfully recommends that the District Court find Plaintiff's above claim to be untimely.

**6.      Agent Gerhart:**

In his Complaint, Plaintiff alleges that U.S. Postal Inspector Agent Gerhart "stalks [Plaintiff] from institution to institution" by inquiring about Plaintiff's Inmate Trust Fund Account. (Document No 1.) Plaintiff further alleges that Agent Gerhart has warned BOP staff to "keep a close eye" on Plaintiff, and this has resulted in Plaintiff's mail being thoroughly searched and "officers routinely stare at [Plaintiff] suspiciously." (Id.)

As stated above, a Bivens action is a judicially created remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens, 403 U.S. at 395 -97, 400, 91 S.Ct. at 1999, 2006(noting that federal courts have authority to grant equitable relief to restrain constitutional violations). Thus, a Bivens action may be brought against federal agents acting under the color of their authority for injuries caused by their ***unconstitutional*** conduct. Plaintiff fails to allege how the foregoing results in a constitutional violation. To the extent Plaintiff may be

---

[5] When screening a Complaint pursuant to Section 1915, a Court may consider a statute of limitations defense *sua sponte* if the defect is apparent from the face of the complaint or from judicially noticeable facts. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006).

alleging that the foregoing constitutes harassment in violation of the Eighth Amendment, the undersigned finds that his claim fails to state a cognizable claim. The verbal harassment or verbal abuse of an inmate, without more, is insufficient to state a constitutional deprivation. Ivey v. Wilson, 832 F.2d 950, 954-55 (6th Cir. 1987); also see Lindsey v. O'Connor, 2009 WL 1316087, at * 1 (3rd Cir. (Pa.))(holding that "[v]erbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment"); Purcell v. Coughlin, 790 F.2d 263, 265 (2nd Cir. 1986)(stating that name-calling does not rise to the level of a constitutional violation); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)(finding that a sheriff's threats to hang a prisoner were insufficient to state a constitutional deprivation). Based on the foregoing, the undersigned finds that Plaintiff has failed to state a cognizable claim against Agent Gerhart.

7.     **Challenge to the Order Requiring Payment of the Special Assessment:**

To the extent Plaintiff argues that a review of the record in Criminal Actions 1:13-00018 and 1:16-00031 reveals that the District Court improperly withdrew $100 from his Inmate Trust Fund Account as payment for his special assessment, Plaintiff's argument is without merit. During Plaintiff's Plea Hearing, the Court noted that in Paragraph 5 of the Plea Agreement the parties agreed that "the appropriate sentence should be a term of imprisonment of 120 months, and that the Court also will impose the mandatory special assessment of $100." (Criminal Action No. 1:16-00031, Document No. 328, p. 9.) The Court then inquired as follows:

> THE COURT:     I want to stop at that point –
>
> MR. COGAR:     Uh-huh.
>
> THE COURT:     - - and ask a question about the special mandatory assessment, because I don't know if Mr. Barker paid it in the last case.
>
> MR. COGAR:     Okay. I am not aware, Judge, one way or the other.

| THE COURT: | If he did pay it, then I would think he's entitled to a credit in this case on that. |
| MR. COGAR: | I - - I think your point is well taken, Judge. And we - - I think we can look into that in the - - in the interim. |
| THE COURT: | Okay. |
| MR. COGAR: | And I certainly would not object to that credit being applied. |

(Id., pp. 9 – 10.) The District Court then clarified as follows:

> And we've talked about the fact that *if* you paid the $100 in the case that was dismissed, but it didn't - - the money wasn't returned to you, then it would - - if it's still with the clerk, then it would seem to me that the United States District Court for the Northern District of West Virginia should credit it to this case, but we'll see what the actual story is.

(Id., pp. 19 – 20.)(emphasis added). During the Sentencing Hearing, however, the District Court stated that Plaintiff had "not paid the mandatory special assessment." (Id., Document No. 331, p. 7.) Furthermore, a review of the docket sheet from Criminal Action No. 1:13-00018 reveals that Plaintiff did not pay the $100 special assessment in that action. Accordingly, Plaintiff is incorrect in his argument that the District Court erred in entering an order in Criminal Action No. 1:16-00031 requiring a $100 payment to the Court from Plaintiff's Inmate Trust Fund Account.

For the reasons stated above, the undersigned respectfully recommends that Plaintiff's Complaint be dismissed for failure to state a cognizable claim.

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Plaintiff's Motion to Proceed in Forma Pauperis (Document No. 5), **DISMISS** Plaintiff's Complaint (Document No. 1), and remove this matter from the Court's

28

docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*.

Date: November 19, 2020.

Omar J. Aboulhosn
United States Magistrate Judge